## KLAPPROTT v. UNITED STATES.

### No. 9382.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 16, 1947.

Decided Jan. 12, 1948.

Writ of Certiorari Granted May 17, 1948.

See 68 S.Ct. 1086.

274

Stephens, Circuit Judge, dissenting.

———◆———

P. Bateman Ennis, of Washington, D. C. (W. Clifton Stone, of Washington, D. C., on the brief), for appellant.

Edward V. Ryan, Asst. U. S. Atty., of Newark, N. J. (Edgar H. Rossbach, U. S. Atty., for the District of New Jersey, of Newark, N. J., on the brief), for appellee.

Before ALBERT LEE STEPHENS, GOODRICH and O'CONNELL, Circuit Judges.

GOODRICH, Circuit Judge.

The proceeding out of which this appeal comes was one to reopen and readjudicate a cause in which the naturalization certificate of the appellant, August Klapprott, had been cancelled.[1]

Klapprott filed a petition on January 6, 1947, to reopen the proceedings. His al-legations assert the following facts: On May 12, 1942, the United States District Attorney[2] commenced proceedings in the District Court of New Jersey to obtain the revocation of Klapprott's citizenship on the ground that fraud had been practiced in its procurement. Klapprott had sixty days within which to answer the complaint. On the fifty-second day of that period he was taken into custody by agents of the Federal Bureau of Investigation and transferred to New York to stand trial on an indictment which alleged conspiracy to violate the Selective Service Act. On July 17, 1942, the Federal District Court in New Jersey, on motion of an United States attorney, entered a default judgment which vacated and set aside appellant's naturalization decree. Four and one-half years later appellant commenced this proceeding to set aside or open that default judgment. The petition was dismissed by the District Court, following argument thereon and the filing of an opinion.

Our questions involve both the substantive law governing denaturalization and procedural problems under the Federal Rules. We think the case can be simplified by getting the questions concerning the statute out of the way first.

The appellant claims three errors with regard to the procedure followed by the Government in his denaturalization. He says, first, that a judgment by default cannot be taken in such proceedings. Second, he says, that in any event, proof of the charges is required before a default judgment is entered. In the third place, he says that in the denaturalization proceedings he was not represented by counsel, as a result of which his constitutional rights were violated. If any of these points can be maintained there is basis for argument that there was error on the face of the record which might be the founda-

---

[1] The statutory background is: 54 Stat. 1158, Oct. 14, 1940, 8 U.S.C.A. § 738.

[2] Section 338(a) of the Nationality Act of 1940 provides: "It shall be the duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any court specified in subsection (a) of section 301 in the judicial district in which the naturalized citizen may reside at the time of bringing suit, for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground of fraud or on the ground that such order and certificate of naturalization were illegally procured." 54 Stat. 1158, Oct. 14, 1940, 8 U.S.C.A. § 738(a).

tion for a bill of review, a point discussed later in this opinion.

■ We think no one of the points is valid. While the statute concerning denaturalization does not expressly say that a judgment may be taken by default against a person who does not appear, it does provide for substitute service.[3] This certainly indicates that the problem of a non-resident or absent defendant was in the mind of the law makers. This, plus the fact that a judgment by default is a matter of course in any civil case where the defendant does not answer, together with the universal language of Rule 55 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, support the conclusion that a judgment by default is proper in such cases.

■ Klapprott's second point is that the Government should have been put to its proof before judgment by default was taken. It was argued that in divorce cases, which involve an important change of status, proof must be made and in certain types of other cases the amount of damages has to be proved before judgment can be entered. The analogies will not hold. Divorce procedure requires submission of proof because, theoretically, the state is concerned. Here the public interest is represented by the Government of the United States whose law officer initiates and conducts the proceeding. Proof is required in unliquidated damage cases because no one ever thinks that a general claim for damages represents anything but the plaintiff's limit of possible recovery and

a money judgment has to be entered for some definite amount. The question of whether the facts have to be proved in a default denaturalization has been raised in the Second Circuit and passed upon there adversely to the appellant's contention. United States v. Borchers, 2 Cir., 1947, 163 F.2d 347, certiorari denied 68 S. Ct. 108. We agree with the Second Circuit.

The appellant's third point is more elaborate. Spelled out it is that the Supreme Court has specified the nature of necessary proof in denaturalization proceedings, requiring it to be "clear and unequivocal".[4] This, it is argued, is like the nature of the proof required in a criminal trial. Therefore, denaturalization proceedings should be treated as though they were criminal and, if so, defendant is entitled to counsel. Since Klapprott had no counsel at the time default was taken against him the argument concludes that he is deprived of his constitutional rights.

■ There is little weight in this argument. In other situations in the law courts have laid down requirements of a higher degree of proof than the mere preponderance of the evidence presented but no one thinks the proceedings become criminal trials on that account. Thus there is authority that when one attacks a release he has the burden of sustaining his allegations by clear, precise and indubitable proof.[5] The same is true in certain types of claims based on fraud.[6] The Congress, in regulating the acquisition and loss of citizenship rights has made such proceed-

---

[3] "(b) The party to whom was granted the naturalization alleged to have been fraudulently or illegally procured shall, in any such proceedings under subsection (a) of this section, have sixty days' personal notice in which to make answer to the petition of the United States; and if such naturalized person be absent from the United States or from the judicial district in which such person last had his residence, such notice shall be given by publication in the manner provided for the service of summons by publication or upon absentees by the laws of the State, or the place where such suit is brought." 54 Stat. 1158, c. 876, Oct. 14, 1940, 8 U. S.C.A. § 738(b).

[4] This was the language used by the Supreme Court in two cases in which the defendant had filed an answer and contested the issue. Baumgartner v. United States, 1944, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525; Schneiderman v. United States, 1943, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796.

[5] Doneyho v. Scottdale Connecting R. Co., 1938, 330 Pa. 207, 199 A. 162; Vogel v. Taub, 1934, 316 Pa. 41, 173 A. 270; cf. Probate Court v. Enright, 1907, 79 Vt. 416, 65 A. 530.

[6] Burley v. Davis, 1946, 132 Conn. 631, 46 A.2d 417; Lundie v. Walker, 1939, 126 N.J.Eq. 497, 9 A.2d 783; Fellman v. Henderson Building & Loan Ass'n of Jersey

ings civil [7] and we think the action is not changed into a criminal prosecution by the fact that the Supreme Court has pointed out the necessity of clear evidence in a contested case to take away citizenship rights.

We think, therefore, that the appellant is a long way from showing any error on the face of the record which would entitle him to reopen it and make the Government prove that he made false statements when he took the oath of citizenship. He says it is not true that at that time he made false statements and he denies that he gained his citizenship by fraud. It is relevant at this point to state the additional allegations in his favor which appear from his affidavit and the petition prepared by his counsel. He alleges that at the time of his arrest in New Jersey he was at a Bund Camp recovering from an illness. On the day of his arrest, he says, he had on his person a letter addressed to the American Civil Liberties Union in New York asking its help in defending him in the denaturalization proceedings to which he had been summoned. This letter was taken from his person when he was arrested and taken to New York for trial. He says that in New York he asked the lawyer appointed to defend him in the criminal trial to investigate the matter of the denaturalization proceedings in New Jersey and the lawyer said he would, but that nothing ever happened. Then, finally, he says, he was convicted in New York and subsequently elected to begin service of his sentence.

That conviction was ultimately reversed by the Supreme Court.[8] But he was immediately arrested with others and went through a long trial in the well publicized "sedition" case in Washington, which was ended by the death of the trial judge while the case was going on. He states that it was not until the nolle prosequi of the case in Washington and the reversal of the New York conviction that he was freed from criminal charges and could give his attention to the proceedings out of which he lost his citizenship.

We think none of what the appellant has said brings him within the established rules for reopening a finished piece of litigation. Furthermore, we do not think he presents the type of case where new law should be made to assist him in such reopening.

Our starting point here is, of course, Rule 60(b) of the Rules of Civil Procedure, set out in full in the margin.[9] Perhaps the Klapprott petition could be treated as a motion; perhaps it could be argued that thus treated it sets up a case of "mistake * * * or excusable neglect". But by the very terms of the Rule a motion on such grounds must be filed within six months after judgment, not four and one half years.

The only possible theory on which there is anything more to say about reopening this case would be on the basis of the last sentence in Rule 60(b). The part we are concerned with is the clause "This rule does not limit the power of a court (1) to entertain an action to relieve a

---

City, 1936, 120 N.J.Eq. 367, 185 A. 495; New York Life Ins. Co. v. Brandwene, 1934, 316 Pa. 218, 172 A. 669.

[7] Cf. Sourino v. United States, 5 Cir., 1936, 86 F.2d 309, certiorari denied 1937, 300 U.S. 661, 57 S.Ct. 491, 81 L.Ed. 869; United States v. Wezel, D.C.Ill.1943, 49 F.Supp. 16.

[8] The ground of reversal was that the evidence was insufficient to support the allegations that there existed a conspiracy to counsel others to evade service in the armed forces of the United States. Keegan v. United States, 1945, 325 U.S. 478, 65 S.Ct. 1203, 89 L.Ed. 1745.

[9] "(b) Mistake; Inadvertence; Surprise; Excusable Neglect. On motion the court, upon such terms as are just, may relieve a party or his legal representative from a judgment, order, or proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect. The motion shall be made within a reasonable time, but in no case exceeding six months after such judgment, order, or proceeding was taken. A motion under this subdivision does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court (1) to entertain an action to relieve a party from a judgment, order, or proceeding, or (2) to set aside within one year, as provided in Section 57 of the Judicial Code, U.S.C. Title 28, § 118, a judgment obtained against a defendant not actually personally notified."

party from a judgment, order, or proceeding * * *." There has been not a little argument as to what is involved in this sentence. The opinion now is that it preserves the old common law and equitable remedies available to a party for opening up a judgment after the term.[10]

This is not only the current course of decision, but has been fully worked out by Professor Moore, assisted by Elizabeth Rogers, with characteristic exactness in a most helpful article called "Federal Relief From Civil Judgments."[11] These remedies were bills of review, bills in the nature of bills of review, writ of audita querela, and writs of error coram nobis, or coram vobis. The Court will modestly refrain from appropriating the results of Professor Moore's research and offering those results as its own. It appears that the types of situations in which one or more of these procedural devices was available to reopen a judgment are classified, roughly, into four groups: (1) errors of law apparent on the face of the record; (2) matters arising subsequently to an entry of a judgment; (3) newly discovered evidence or fraud in the procuring of the judgment; (4) matters of fact which had not been put in issue or passed on and which were material to the validity and regularity of the proceeding itself.[12]

It is perfectly clear that when one goes over the allegations of the Klapprott petition, taking all the statements as true, there is not a thing in them which fits the set of facts there presented into any situation on which relief could be given within the bounds of these well established, but not so well known, remedies. The same is true when one checks the allegations with the grounds for opening up a judgment set out in the Restatement of Judgments, §§ 120–123, inclusive. The conclusion on this phase of the matter is that Klapprott has not shown alleged facts which brings him within any of the rules heretofore established for opening up judgments duly entered.[13]

Nor do we see such equity in the appellant's situation as would induce us to create new remedies for him, even if we had the power. While Klapprott says that he did not lie when he was naturalized, the great emphasis in all the argument made for him is to the effect that he does not believe the Government now would be able to prove its case against him. This does not seem to us a very powerful reason for opening a stale case. He does not suggest that he did not know the nature of these proceedings that cancelled his citizenship. And the most that he did in preparation for them was to, on his own statement, write a letter to the American Civil Liberties Union which he never mailed. There is no fraud or intimidation suggested. On his own statement he asked for no help except on the one occasion when he asked a court appointed lawyer in New York to

---

[10] Wallace v. United States, 2 Cir., 1940, 142 F.2d 240; accord Sharlot v. Ford Motor Co., D.C.E.D.N.Y.1945, 7 F.R.D. 155. There is no requirement that the appellant set forth for which remedy his motion is a substitute, but the rule makers, by means of the reservation which they wrote into the rule, merely recognized a power which already existed rather than created new ones or enlarged the old ones. Fraser v. Doing, 1942, 76 U.S.App.D.C. 111, 130 F.2d 617. While it is not necessary for a person seeking relief to meet a denial thereof, unless he can point to a case in which the precise situation was presented, we think he must demonstrate the relief sought by him is of the character recognized by the former writs. These are our guideposts in determining whether the case is proper for disturbing the finality of the judgment.

[11] 55 Yale L. J. 623 (1946).

[12] See Moore, Federal Relief from Civil Judgments, 55 Yale L.J. 623, 659-682 (1946); 8 Cyc. of Federal Proc. (2d Ed. 1943) §§ 3614, 3615.

[13] We reach this conclusion without regard to the answer to the question whether such proceedings would constitute a suit against the United States, not to be brought without the Government's consent. Compare Zegura v. United States, 5 Cir., 1939, 104 F.2d 34, certiorari denied 1940, 308 U.S. 586, 60 S.Ct. 109, 84 L.Ed. 490, (such proceedings require governmental consent); United States v. Haas, D.C.N.D.N.Y.1944, 58 F.Supp. 179 (same), with Jones v. Watts, 5 Cir., 1944, 142 F.2d 575, 163 A.L.R. 240 (such consent is not necessary); United States v. Sotis, 7 Cir., 1942, 131 F.2d 783 (same).

278

see about a proceeding in New Jersey. When nothing was done he did not follow it up.[14] It is quite evident that his citizenship becomes more valuable now that the war has been concluded. Germany has lost and the possibility of deportation is not a gratifying prospect.[15] We think that the rule of law which limits the bases on which litigation long since closed is to be reopened is properly applied in this case.

The order will be affirmed.

O'CONNELL, Circuit Judge (concurring).

While there can be no doubt that a default judgment may be entered in a proceeding to cancel a certificate of citizenship, I believe that where such judgment is not based upon the presentation of evidence ex parte, every consideration possible should be given to the opening of such judgments, so that citizens may not be lightly deprived of the highest right within the power of the government to bestow.

It is apparent from the record that the court below had this principle in mind; for sweeping aside the technicalities, the district judge considered the equities of petitioner's cause. Undoubtedly the granting or denial of Klapprott's petition was a matter within his discretion, and on the basis of the record before us, I am not prepared to say that there was an abuse of that discretion. I note that Klapprott waited more than four years after the entry of the default judgment to attack its validity; and, while it is his contention that he lacked the necessary liberty and funds to pursue his petition at an earlier date, no such difficulties apparently prevented his participation with others in litigation to enjoin the Department of Justice from deporting him. See Citizens Protective League v. Clark, 1946, 81 U.S.App.D.C. 116, 155 F.2d 290, certiorari denied 1946, 329 U.S. 787, 67 S.Ct. 354. I note further that, only three days after certiorari had

been denied in the Citizens Protective League case, supra, Klapprott found himself able to present the instant petition through able counsel. There being ample evidence in the record before us to justify the finding of the court below that Klapprott had been guilty of laches, I am constrained to agree with the conclusion that the order of the district court should be affirmed.

STEPHENS, Circuit Judge (dissenting).

I dissent. I entertain serious doubt as to the legality of a decree revoking citizenship without proof being adduced in open court. I hold that, in the circumstances of this case, the default should be set aside.

---

[14] See Restatement, Judgments § 126 (2) (a), (c), (e), (f) (1942).

[15] But even at this late date Klapprott still has a proceeding in which he may be heard before a deportation order is issued against him. See In re Enemy Alien Hearing Boards, Circular No. 3616, December 13, 1942, Department of Justice, Washington, D.C.; Circular No. 3616, Supp. No. 1, January 7, 1943, Department of Justice, Washington D. C.; cf. Citizens Protective League v. Clark, 1946, 81 U.S. App.D.C. 116, 155 F.2d 290, 295.