### KLAPPROTT v. UNITED STATES
No. 10,034.

United States Court of Appeals Third Circuit.

Argued March 21, 1950.

Decided July 20, 1950.

January 7, 1947.[1]  On February 17, 1947, it was dismissed on the ground that the Court had lost jurisdiction of the matter through lapse of time.  On that occasion the stated position of the Government was that the material allegations of the petition were denied and that in the event of a hearing on the merits of the petition, those allegations would be contested.  We affirmed the dismissal of the petition.[2]  The Supreme Court reversed[3] and on April 4, 1949, in its amended judgment in the case, said: "The judgment of the Court of Appeals is reversed and the cause is remanded to the District Court with directions to receive evidence on the truth or falsity of the allegations contained in petitioner's petition to vacate the default judgment entered in the denaturalization proceedings."[4]

The District Court had a hearing in accordance with the above mandate on June 15 and 16, 1949, and some twenty-two witnesses testified.  At that hearing it was conceded by appellant's attorney that the burden of proof, so far as having the default set aside, was on the defendant. From the stipulated facts and from the testimony, the Trial Court made written findings of fact and conclusions of law. 9 F.R.D. 282.  Appellant urges that four of the findings of fact are in error (one of those so designated is really part of the first conclusion of law), that the Court erred in refusing to find that appellant was "not guilty of negligence in failing to do more than he did initially in seeking to defend the denaturalization proceedings" and that the Court erred in the admission of certain testimony.

It was admitted, and properly so, by the attorney for the appellant at the oral argument on this appeal, that the rule governing both the findings of fact and refusals of requests to find, is whether there was substantial evidence supporting the action of the District Judge.[5]

P. Bateman Ennis, Washington, D. C. (Frederic M. P. Pearse, Newark, N. J., Morton Singer, New York City, on the brief) for appellant.

Edward V. Ryan, Asst. U. S. Atty., Newark, N. J. (Alfred E. Modarelli, U. S. Atty., Newark, N. J., on the brief) for appellee.

Before McLAUGHLIN and KALODNER, Circuit Judges, and FEE, District Judge

McLAUGHLIN, Circuit Judge.

This appeal is from an order of the District Court which overruled appellant's petition to vacate a default judgment entered against him in a denaturalization proceeding on July 17, 1942.  The petition was originally filed in the District Court,

---

1. In the order overruling the petition the date of the filing of the petition is given as January 6, 1947.

2. 3 Cir., 166 F.2d 273.

3. 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266.

4. 336 U.S. 942, 69 S.Ct. 384, 398, 93 L. Ed. 1099.

5. Bechtel v. United States, 9 Cir., 176 F. 2d 741, and Fix v. United States, 9 Cir., 176 F.2d 746, involve trials *on the merits*

Five points of appellant's six points are interrelated. They call for a detailed examination of the evidence and will be discussed together.

It is asserted that:

(1) the Court below erred in finding as a fact that appellant knowingly, voluntarily and intentionally permitted entry of the default judgment cancelling his certificate of citizenship,

(2) appellant's statement in his petition that "in view of his poor physical condition, petitioner was unable to get around very well and since he was also in very poor financial condition petitioner had no money with which to retain a lawyer to represent him" was not false as found by the Court,

(3) appellant's statements that he had written a letter to the American Civil Liberties Union asking for legal assistance, which letter, prior to mailing, was taken from him by agents of the Federal Bureau of Investigation, and that at the time he claims he was arrested he was working on a draft of answer to the complaint in this cause which he was unable to complete because of his alleged arrest and which was left at his home when he was taken away, were not false as found by the Court,

(4) appellant's allegation in paragraph 5 of his petition, that his court appointed attorney in the New York criminal case, after having promised to look into the naturalization matter, instead of doing so, "neglected the matter entirely and permitted a judgment to be entered against petitioner by default, after having, by his promises, lulled petitioner into a sense of security with respect to this matter" was not false as found by the Court,

(5) the Court erred in not finding as a fact that the harassing criminal trial to which appellant had been subjected, and the long period of confinement in jail, had so proccupied appellant's mind and undermined him physically and mentally that he was not guilty of negligence in failing to do more than he did initially in seeking to defend the naturalization proceeding.

Appellant testified that he was served with the complaint in this denaturalization action in the middle of May, 1942, and that he read it. The return on the summons shows that it was served personally on appellant May 15, 1942. Under the statute, appellant had sixty days from the date of the service upon him in which to appear. He states in his petition that he became a naturalized citizen on November 16, 1933. According to his own testimony, for about two years prior to the end of 1941 he had been writing editorials at the rate of at least one a week for a weekly newspaper. He was vice president of the company which published the newspaper. In addition, he traveled about, lecturing on German-American subjects. He was eastern departmental leader of the German-American Bund from 1939 to its dissolution when, as he says, "the war broke out". He had been a mason, bricklayer and tile setter. Even in the above brief outline ample evidence is indicated to justify the conclusion of the District Judge that appellant " * * * is more than ordinarily intelligent". Appellant testified that he knew he had sixty days to answer the complaint and that his time expired July 14, 1942. He said he was always thinking of the expiration date.

During the early spring of 1942, as the evidence showed, and as the Trial Court found, appellant was seriously ill from stomach ulcers and had been confined to a hospital from March 8th to March 26th of that year. After his release from the hospital, also as the Court found, appellant's health steadily improved. On April 20th, less than a month after he left the hospital, he attended a party at Backofen Tavern, Union City, New Jersey. That party, as appellant says, was given "to welcome me back to my health." Its date, according to appellant, coincided with Hitler's birthday. On June 9, 1942, he drove his station wagon from Camp Nordland, New Jersey,

in denaturalization matters where the Government was required to prove its case by clear, unequivocal and convincing evidence. In the instant case the burden was on the defendant-appellant to show good cause why the default judgment should be set aside.

a distance of forty miles, to New York City, where he stayed overnight. He went to Hartford, Connecticut, by train the following day and there testified before a Federal Grand Jury. On returning to New York he stayed overnight in that city and drove back to Camp Nordland in his station wagon the next day. F.B.I. agents who saw Klapprott on June 5, June 27 and July 7, indicated Klapprott was at least well enough to get around and Dr. Matthews, who examined him on July 7, said, "He is not acutely ill." A few days later he was examined by a physician in New York who testified that Klapprott "appeared to be in good health at that time."

Klapprott claimed that after he was served in the denaturalization proceeding and prior to the expiration of his time to answer, he wrote a letter to the American Civil Liberties Union requesting legal assistance. Speaking of that time he said, "I wasn't quite well yet, * * *." He also said that he had drawn up a partial draft of an answer to the complaint. He testified that the letter was taken from his coat on July 7, 1942, at Nordland, New Jersey, the day he says he was arrested on selective service criminal charges originating in the Southern District of New York. He states that the draft of his answer was left at his home when he was taken away. According to the F.B.I. agents (one of them no longer associated with the F.B.I.) who were with Klapprott at Nordland on July 7, 1942, Klapprott was not arrested at that time but came voluntarily with them to Newark. The agent who searched Klapprott's person and premises (with the latter's permission, according to the agent) testified that he took no letter addressed to the Civil Liberties Union, as Klapprott claimed, or ever heard anything about such a letter. Appellant said that he never wrote another letter to the Civil Liberties Union. He admitted that he waived removal to New York. He said that while he was in New York at the House of Detention that there were no restrictions upon him regarding seeing lawyers. He was assigned a lawyer in the New York case. He attended the New York trial every day

and thereafter remained in the Federal House of Detention, New York City, until June 19, 1943. He stayed in New York in order to take care of his appeal from the judgment of conviction against him in the New York case. In June of 1943 he asked to start serving his sentence and was transferred to Milan, Michigan. He testified that at Milan he was permitted to send and receive letters. In 1944 he was transferred to Washington, D. C., where he was a defendant in the so-called sedition trial in that city. He was in confinement in Washington during the years 1944, 1945 and 1946. During that time he received numerous visits from various lawyers. He never asked the Court for assistance. He never asked the United States Attorney or anyone else for assistance. He was later transferred to Ellis Island. While there he was permitted to return to his home to obtain papers which he said were needed.

The medical records for appellant while he was confined in New York City show that he was not in the prison hospital or seriously ill. The Milan records show that he was not sick during his stay there and that he was working as a tile setter at least part of that period. During his almost three years in Washington he was in the infirmary a total of twenty-three days. At Ellis Island he was examined and passed by the resident physician and worked there as a mason. While there, he was allowed to write as many letters to lawyers and to his wife as he wished. He was paroled on April 30, 1947.

There was testimony by Agent Watson that on June 5, 1942, at Camp Nordland, appellant had told him that because of his financial condition he would not be able to defend the denaturalization proceeding. As to this, appellant said, "I don't know whether I said that that way." There was also testimony by Agent Weisiger that appellant had told him and Agent Baumeister on June 27, 1942, at Nordland, "that he wasn't going to defend the naturalization proceeding." Weisiger said that he told appellant that there was " * * * no reason why he shouldn't defend the case;

that he would receive a fair trial if he did defend the case." Weisiger stated that appellant gave as his reason for not defending, that he thought no one would believe that he was not loyal to Germany instead of the United States because he had written "these pro German articles * * *." Agent Kleinkauf was the person who advised appellant on July 7, 1942, of his indictment in the Southern District of New York for conspiracy to violate the Selective Service Act of 1940 and the Alien Registration Act. He stated that appellant told him "that he had no intention of defending himself in this denaturalization proceeding, * * *."

■ The evidence is convincing that Klapprott, after he had been served in the denaturalization proceeding and prior to July 14, 1942, when default judgment was taken against him therein, thoroughly understood the nature of the proceeding against him and that he voluntarily abstained from appearing in the matter during the sixty day statutory period allowed for appearance after service of the summons and complaint upon him. It is clear that thereafter and until on or about the time the present petition was filed on January 7, 1947, appellant did nothing affirmative in connection with attempting to reopen the default judgment entered on July 14, 1942, despite the fact that throughout those years he was in no way prevented from taking any proper steps in that connection if he had so desired. The finding of the Court objected to under the first point has substantial foundation in the record and must be sustained.

■ Ample evidence also supports the lower Court in holding to be false the contention that Klapprott was unable to get around very well because of his physical condition. He had been seriously ill back in March of 1942, but by the middle of that April he was well enough to attend a party welcoming him back to health. Both lay and medical testimony make it abundantly clear that during the period he, at the very least, was not acutely ill. In the first part of June, 1942, when he still had well over a month to enter an appearance in the denaturalization proceeding, he was well enough to drive back and forth between Nordland and New York, a distance of 40 miles, and to travel to and from Hartford, Connecticut, by train. This point embraces the assertion that Klapprott had no money with which to hire a lawyer. The proof was that in the last week of June, 1942, he did have two hundred dollars cash obtained from the sale of his automobile. There was no proof that he ever tried to engage an attorney. He never requested aid from the Court in this connection. Of necessity, this question of Klapprott obtaining legal assistance leads to his third point—his suggestion that the Court should have found that he had written a letter to the Civil Liberties Union which was taken from him by F.B.I. agents. The Trial Judge was justified, from the evidence, in finding as he did that Klapprott had never written such letter. But, in addition, Klapprott's testimony on which the request was based shows him to have been quite familiar with at least one method of obtaining legal representation. Despite the fact that he was not prevented from so doing and never claims that he was, Klapprott thereafter made no attempt to get in touch with the Civil Liberties Union or any other person or group asking for legal assistance.

■ There is nothing in the record to validate the fourth request which was denied as false. Regarding this point, appellant's brief states as follows: "At the outset we concede that Klapprott's belief that his Court-appointed counsel in the New York case permitted a judgment to be entered against appellant in the denaturalization proceeding was an incorrect statement." It is admitted in the same part of appellant's brief that the Court appointed attorney for Klapprott in the New York case never spoke with Klapprott prior to his appointment on July 28, 1942. The default judgment in the instant suit was entered July 27, 1942. While it is not conceded that Klapprott, at the time he spoke to the attorney, knew that a default judgment had been entered against him, he did

know the expiration date for his appearance, and he did know that he had not appeared.

■ From the evidence, the District Judge was clearly correct in refusing to find that Klapprott's criminal trials and jail confinement had so preoccupied him and undermined him physically and mentally as to excuse his failure to defend this case initially. The record reveals most substantial foundation for the position that Klapprott knowingly and understandingly paid no attention to the denaturalization proceedings after he had been personally served and during his time to answer or otherwise proceed in the action.

■ Finally it is asserted that the District Court erred in admitting testimony relating to appellant's prior activities and political views. The background evidence objected to was important to test the credibility of appellant—it had immediate relationship to Klapprott's ability to understand that he had been served in a suit which was to take away his American citizenship and that if he wished to contest the matter it was necessary for him to make an affirmative appearance within sixty days. The political activities evidence gave a weighty reason for this intelligent appellant not defending, namely, that he could have readily concluded that his past conduct had pretty much eliminated any chance of a successful defense to the charge that he should be deprived of his citizenship. Generally speaking, the objected to testimony was illuminative regarding Klapprott's credibility, his education, training, character and ability, which were the reasons announced by the Court below for permitting it, and which were important in arriving at the basic decision in this case.

A patient, able, experienced judge has found that appellant, after full, fair opportunity, failed to prove the truth of the allegations in his petition. There is substantial evidence in the record to justify the findings.

The judgment of the lower Court will be affirmed.