428

**UNITED STATES of America,**
**Plaintiff,**

v.

**Frank COSTELLO, Defendant.**

United States District Court
S. D. New York.

Dec. 1, 1954.

J. Edward Lumbard, U. S. Atty., for Southern Dist. of New York, New York City, Alfred P. O'Hara and Thomas A. Bolan, Asst. U. S. Attys., New York City, of counsel, for plaintiff.

Jack Wasserman, Washington, D. C., for defendant.

McGOHEY, District Judge.

In a suit brought under the Nationality Act of 1940 [1] to cancel the defendant's naturalization which occurred on September 10, 1925, the Government moves under Rule 37(b) (2) (iii) of the Federal Rules of Civil Procedure, 28 U.S.C.A., to strike the defendant's answer and for judgment by default because the defendant, after being ordered by the Court to do so, refused to answer certain questions on his oral examination before trial. The refusal in each instance was based on a claim of privilege against self-incrimination under the

1. 54 Stat. 1158.

Fifth Amendment of the United States Constitution.

The complaint was filed October 22, 1952. Issue was joined by service of the answer on March 12, 1953. On May 13, 1954 the defendant was convicted on three counts of an indictment filed March 11, 1953 charging evasion of income taxes. He was sentenced on May 17, 1954 to a term of five years and fined $30,000 and the costs of prosecution. His immediate appeal from the judgment of conviction has been argued but not decided. On July 27, 1954 the plaintiff served notice pursuant to Rule 26 to examine the defendant orally before trial. During the examination which began on September 7 the defendant refused to answer several questions, in each instance claiming privilege against self-incrimination under the Fifth Amendment. On October 28 the claims were rejected and he was ordered to answer the questions. However, when the examination was resumed on November 5 he again claimed privilege and refused to answer. This motion followed.

The defendant in his affidavit in opposition to this motion states that his claim of privilege was reasserted in good faith, because he was "advised and firmly · believe[s]" that his answers "would have a distinct bearing on my past and present activities, would furnish links in the chain of incriminating testimony and can and would be utilized in future prosecutions against me for offenses not barred by the Statute of Limitations." He further states "It was not my intention to wilfully disregard the Order of the Court as I am perfectly willing to abide by any final Order which will be entered by the Appellate Courts with reference to my claim of self-incrimination." Accordingly, he urges, entry of judgment by default cancelling his naturalization is a penalty much too severe under the circumstances. He contends that an order imposing a fine of $100 as punishment for contempt would be appropriate and would, without danger to his citizenship, permit him to seek appel-late review of the order compliance with which, he says, will make him incriminate himself.

The Government contends that the defendant by "wilfully and deliberately" disobeying the Court's order "has completely deprived [the Government] of the pre-trial examination to which it is entitled"; that his disobedience makes the defendant "subject to various penalties in the discretion of the Court" and that striking the answer and rendering judgment against the defendant by default is the only penalty which would be "effective."

The Government further urges that to be "efficacious" the default judgment "should be without any right on defendant's part to open the same by some subsequent action. Otherwise the defendant would be in the position of being able to appeal the decision of this Court with the assurance that if he lost the appeal he could always reopen the case by performing the designated action." The defendant's stated desire for review of the order directing him to answer is, says the Government, "a completely inadequate reason for requesting that any condition be attached to the judgment." That order being interlocutory, it is urged that "this Court should not allow an appeal of the same under the guise of a default judgment without prejudice."

It is true, as the Government's brief states, that under Rule 37(b) one who disobeys an order to answer questions on oral examination is "subject to various penalties in the discretion of the Court." It is, however, equally true that subsection (2) of that rule limits the Court's discretion to "*such orders* in regard to the refusal [to answer] *as are just*". (Emphasis supplied.)

 The correctness of the order directing the defendant to answer is not and indeed cannot be challenged on this motion. The sole question here is whether an order would be "just" which not only summarily deprived the defendant

of citizenship by default but also purported to deny him the opportunity to open the default upon an offer to answer. I entertain no doubt that it would not be "just." No case has been cited or found which suggests otherwise. Decisions cited by the Government dealing with ordinary civil cases are not controlling here. "[The Supreme] Court has held that because a naturalization judgment involves interests of a different order from those involved in other civil proceedings, the annulment of such a judgment is guided by considerations qualitatively different from those that govern annulment of ordinary judgments. Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796; Baumgartner v. United States, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525. The considerations that set a contested proceeding for cancelling a naturalization judgment apart from other suits to annul a judgment, are equally relevant to a default judgment causing such cancellation."

The foregoing statement is from the dissenting opinion in Klapprott v. United States[2] of Justice Frankfurter whose suggested disposition in that case was eventually adopted in substance as the judgment of the Court.[3] The history of that case exemplifies the application of the principle in practice.

In December, 1946 Klapprott petitioned the District Court of New Jersey to vacate its judgment entered on default in July, 1942 cancelling his naturalization. He alleged in substance that he never intended to default and that his failure to answer and contest the suit was due first to illness, and later to imprisonment on other serious charges, preoccupation with his defense thereto and lack of funds. Denial of the petition on the ground of laches[4] was affirmed by the Court of Appeals for the Third Circuit.[5] The Supreme Court at first reversed and remanded with instructions to the District Court "to set aside the judgment by default and grant the petitioner a hearing on the merits raised by the denaturalization complaint."[6] This judgment, after reconsideration on motion of the Government, was later modified[7] substantially in accord with Justice Frankfurter's views to read: " 'The judgment of the Court of appeals is reversed and the cause is remanded to the District Court with directions to receive evidence on the truth or falsity of the allegations contained in petitioner's petition to vacate the default judgment entered in the denaturalization proceedings.' " It is true that on remand the District Court after taking testimony rejected Klapprott's claims and again denied the petition[8] and the Court of Appeals having affirmed,[9] certiorari was denied.[10] The Government therefore presses the decision of the Court of Appeals as "clear cut and conclusive authority for the proposition that a default judgment may be rendered in a denaturalization action." That proposition, however, is one with which we are not immediately concerned. What is presently important is that, precisely because the judgment against Klapprott took away his citizenship, the Supreme Court did not treat it as one in an ordinary civil action but, guided by the "considerations that set a contested proceeding for cancelling a naturalization judgment apart from other suits to annul a judgment," afforded Klapprott the opportunity to open the default four and one-half years after it occurred. The

2. 335 U.S. 601, 628, 69 S.Ct. 384, 397, 93 L.Ed. 266.

3. 336 U.S. 942, 69 S.Ct. 384, 93 L.Ed. 1099.

4. D.C., 6 F.R.D. 450.

5. 166 F.2d 273.

6. 335 U.S. 601, 616, 69 S.Ct. 384, 391, 93 L.Ed. 266.

7. 336 U.S. 942, 69 S.Ct. 384, 398, 93 L.Ed. 1099.

8. D.C., 9 F.R.D. 282.

9. 183 F.2d 474.

10. 340 U.S. 896, 71 S.Ct. 238, 95 L.Ed. 649.

defendant here asks no such extraordinary consideration. He asks only that he be given the opportunity promptly to seek review of the order directing him to answer and to obey it if affirmed, without losing his right to contest the suit to cancel his naturalization.

Such a disposition seems to me to be "just" and indeed in these circumstances to be required by the doctrine of Klapprott's case. Accordingly, the motion to strike the defendant's answer and to enter a default judgment cancelling his naturalization is denied. However, for his admitted disobedience of the order directing him to answer, the defendant will be ordered to pay a fine of $500.

On condition that the defendant, within five days from entry of the order herein, files notice of appeal from so much thereof as imposes punishment by fine and thereafter diligently prosecutes the appeal, payment of the fine will be stayed pending final determination of the appeal.

Settle order.