**UNITED STATES of America,**

v.

**Jonas KLIMAVICIUS.**

**Civ. No. 84–0183 P.**

United States District Court,
D. Maine.

Oct. 30, 1985.

Ronnie L. Edelman, Alan Held, Trial Attys., Washington, D.C., F. Mark Terison, Asst. U.S. Atty., Portland, Me., for plaintiff.

Ivars Berzins, Babylon, N.Y., Daniel Bates, Daniel G. Lilley, Portland, Me., for defendant.

**MEMORANDUM OF DECISION AND ORDER GRANTING GOVERNMENT'S MOTION TO COMPEL DISCOVERY AND DENYING GOVERNMENT'S MOTION FOR SANCTIONS**

GENE CARTER, District Judge.

In this denaturalization proceeding Plaintiff seeks to compel the deposition testimony of the Defendant and seeks sanctions for Defendant's refusal to answer questions at a deposition held on March 6, 1985. In its six-count Complaint, Plaintiff alleges that Defendant illegally obtained entry into and citizenship in the United States by concealing that he had aided the Nazis in persecuting civilian populations during World War II.

Defendant refused to answer any questions at his deposition other than those requesting his name and address. In response to other questions, Defendant responded, "Fifth Amendment," indicating that he did not wish to answer because his responses might tend to incriminate him. Defendant also refused to produce certain documents and handwriting and signature exemplars on Fifth Amendment grounds.[1] Plaintiff asserts in its motion herein that the Fifth Amendment privilege is unavailable to Defendant.

A major portion of Defendant's argument supporting his claim of Fifth Amendment privilege is that he has a reasonable fear of criminal prosecution in the U.S.S.R.,

---

1. The Court determined in a prior order that the Defendant could not support a Fifth Amendment claim as to the handwriting and signature exemplars. *United States v. Klimavicius,* 613 F.Supp. 1222 (D.Me.1985) (Order).

West Germany, and Israel. The Supreme Court has not decided whether the Fifth Amendment privilege is available to individuals who fear foreign prosecution. *See Zicarelli v. New Jersey State Commission of Investigation,* 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972). In considering such a claim, however, the Court stated, "It is well established that the privilege protects against real dangers, not remote and speculative possibilities. *Id.* at 478, 92 S.Ct. at 1675. The Court agrees with the Plaintiff that Defendant has not made an adequate showing that he is in any real danger of foreign prosecution.

After initial submission of supporting memoranda and affidavits, in which Defendant failed to submit evidence sufficient to support his invocation of the privilege, the Court issued an order requesting additional information. *United States v. Klimavicius,* 613 F.Supp. 1222 (D.Me.1985) (Order). The Court allowed the Defendant another opportunity to present a record because the privilege against self-incrimination plays such an important role in the American scheme of justice. *Id.* The Court requested that the Defendant submit certified, translated copies of the text of all foreign laws which indicate he might be subject to prosecution and to make some showing that the laws would be applied to him if the allegations in the Complaint were proved. Defendant has not complied with this Court's Order, but instead, has relied on a plethora of unsubstantiated statements, irrelevant documents and copies of laws which have not been shown to be accurate or current.[2]

For example, in support of his claim that he has a reasonable fear of prosecution in West Germany, the Defendant states that "a Latvian, Viktors Arajs ... was successfully prosecuted in Hamburg, Germany,"

Defendant's Memorandum at 8, but provides no documentation of that claim or the circumstances of that case. Similarly, Defendant cites *In re Ryan,* 360 F.Supp. 270 (E.D.N.Y.1973), *aff'd without opinion,* 478 F.2d 1397 (2d Cir.1973), in which the court granted a West German extradition petition concerning a woman accused of being a concentration camp guard in Poland. Although the *Ryan* court rejected the Defendant's lack of jurisdiction claim, 360 F.Supp. at 273, n. 4, Defendant presents nothing to show the current state of the law.[3]

Defendant's other evidence in regard to West German law or treaties between the United States and West Germany suffers the same deficiencies. Defendant submits a certified translation of a letter from the First Criminal Court in the Regional Court of Landau/Palatinate in West Germany to the Department of Justice in 1979 requesting assistance in obtaining testimony from an individual residing in New York in criminal proceedings against Albert Eichelis. The letter includes what appear to be quotations of West German penal code statutes, but Defendant does not submit the actual statutes or present evidence that these statutes are current or that they will be applied to him. Defendant submits a *Canadian* information and complaint requesting the extradition of Helmut Rauca, a German citizen accused of war crimes in Lithuania, but Defendant does not produce or discuss the extradition treaty between West Germany and Canada or submit evidence that the German-American treaty allows similar extradition requests. Defendant does not submit evidence that jurisdiction was ever found to be proper in the Rauca case or that extradition was granted. Overlooking all of these problems with

---

2. The Court can conduct its own research on foreign law when an issue is raised. *See* Fed.R. Civ.P. 44.1. Defendant, however, by not even citing current texts of the foreign law on which he relies, has not made enough of a showing for the Court to invest its limited resources in its own inquiry.

3. Defendant also states that this is the latest extradition request made by West Germany, indicating that country has not made any such requests for over twelve years, although numerous active investigations and denaturalization proceedings have taken place on bases similar to Defendant's during the last six years. *See The Wall Street Journal,* June 2, 1983, at 34, col. 2.

the probative value of the Rauca complaint, it appears from that complaint that there had been an outstanding warrant for Rauca's arrest in West Germany for many years prior to the extradition proceedings, unlike the instant case.

Finally, Defendant submits correspondence between Attorney General William French Smith and the Federal Minister of Justice of West Germany, which does not pertain directly to the Defendant but which discusses the shared view of those officials that individuals who have committed war crimes be tried and punished. However, the same correspondence indicates that West Germany has *no jurisdiction* to try Defendant for crimes committed in Latvia by a nonGerman.[4] Therefore, since Defendant has not submitted any probative evidence that West Germany has jurisdiction to prosecute him, he cannot sustain the invocation of the Fifth Amendment privilege on the basis of a reasonable fear of prosecution in West Germany.

The evidence presented regarding the likelihood of Defendant's extradition to and prosecution in the Soviet Union is even more tenuous. The government has submitted an affidavit by Neal Sher, Director of the United States Department of Justice, Office of Special Investigations, stating that there is no extradition treaty in force between the United States and the Union of Soviet Socialist Republics. Authority relied on by the Defendant states, "In the absence of a treaty provision authorizing delivery ... the United States is powerless to extradite...." *Ryan v. United States,* 360 F.Supp. 264, 265 (1973). Thus, it seems extremely unlikely that a request for extradition from the Soviet Union could be granted. None of Defendant's other evidence persuades the Court that there is a realistic chance Defendant will be prosecuted in the Soviet Union.

Defendant relies on two instances in which the United States purportedly sought extradition of an individual to the Soviet Union or the United States sought deportation to the Soviet Union. Defendant's Memorandum at 4, 5. The government's brief makes clear, however, that in one case the Defendant *designated* the Soviet Union as the country to which he wished to be deported, and in the other, the Defendant declined to designate any country and so was deported to his birthplace pursuant to 8 U.S.C. § 1253(a)(4). Plaintiff's Reply Memorandum at 2.[5]

Defendant discusses a 1965 trial against Boleslaus Maikovskis for crimes committed in 1941 and 1942 while Latvia was under Nazi occupation and a similar trial against Karl Linnas in Estonia in 1962. Defendant refers to Article 59 of the Latvian Soviet Socialist Republic's Criminal Code as the basis of the 1965 charges against Maikovskis and refers to an unpublished opinion in the Southern District of New York, but has presented nothing from which this Court could determine that Maikovskis' circumstances are significantly similar to his own. Defendant submits Article 62 of the Lithuanian Soviet Socialist Republic Criminal Code which he copied from a code book published in 1977, and which was apparently translated by a Ms. Simona Pipko who makes no submission to the Court as to the accuracy of the translation or as to her qualifications.

However, putting aside the difficulties presented to the Court in determining the foreign law on which Defendant relies, the lack of an extradition treaty indicates that, if these laws are in existence, it is extremely unlikely that they could be applied to the Defendant.[6]

---

**4.** The letter to Attorney General Smith states, "the German-American extradition treaty basically allows extradition only for punishable acts perpetrated in the jurisdiction of the petitioning state."

**5.** Defendant has relied on numerous unpublished opinions, copies of which he has failed to submit to the Court. Accordingly, they have been disregarded by the Court.

**6.** Defendant's pleadings are also replete with unsubstantiated and irrelevant statements condemning the Soviet legal system. For example, he states, "After the Soviets reoccupied Lithuania, they dealt in their customary fashion with those [Lithuanians] who had opposed them.

In support of his claim that he has a reasonable fear of being prosecuted under Israeli law, Defendant has submitted the Nazis and Nazi Collaborators (Punishment) Law, a sworn statement by Marvin E. Hankin, Senior Assistant to the State Attorney of Israel regarding procedural aspects of this law made in connection with the extradition request of John Demjanjuk, the United States government's brief in the extradition proceeding against Demjanjuk, a *Wall Street Journal* article and a *Washington Post* article.

The Defendant does not present a certified translation of the Israeli law, but has submitted what appears to be a copy of a printed text which the Court will treat as accurate. Defendant does not submit the Israeli-American extradition treaty but the United States' memorandum submitted in support of the extradition of John Demjanjuk indicates such a treaty exists or existed as of April 18, 1984.

The Israeli law allows the prosecution in Israel of persons charged with crimes committed outside Israel in connection with Nazi persecution. According to the memorandum submitted by the United States in the Demjanjuk proceeding the Israeli-American extradition treaty was applicable to Demjanjuk. Appendix C to Defendant's Affidavit, Aug. 28, 1985, Government's Pre-hearing Memorandum at 12. The treaty allows extradition of an individual for crimes committed outside Israel's borders. *Id.* at 14. Even though Defendant has not actually submitted the relevant laws to this Court, or presented evidence that he has done so, the Court notes that a closer question of whether Defendant has a reasonable fear of prosecution is raised by the evidence submitted, because it at least appears possible from that evidence that Defendant could be prosecuted in Israel.

However, the Court believes that it is entirely speculative that Defendant will be prosecuted in view of several factors. Defendant has submitted a *Wall Street Journal* article (June 2, 1983) indicating that in the preceding 23 years only one person, Adolph Eichmann, had been tried under the law allowing Israeli courts to prosecute Nazi criminals even though their crimes were committed in Europe.[7] The United States, in its affidavit by Neal Sher, states that OSI is apprised of all foreign governments' communications to the government regarding allegations relating to individuals residing in the United States who may have assisted Nazi persecution. A request for extradition may be granted for an American citizen pursuant to treaty. *Escobedo v. United States*, 623 F.2d 1098, 1107 (5th Cir.1980). Mr. Sher states that "[n]o foreign government has made any demands on the government of the United States, nor has initiated action leading to the making of demands, for the delivery of the Defendant." There appears to be no direct threat of foreign prosecution.

Defendant contends that if he is denaturalized, he will be deported and then might be subject to extradition by the three countries which he fears. As Plaintiff points out, deportation would require a separate legal proceeding. If Defendant should be deported, he may choose the country to which he is deported, subject to veto by the Attorney General if the choice is not thought to be in the best interests of the United States. 8 U.S.C. § 1253(a). Since no extradition requests have been made of the United States, it is purely speculative that extradition of Defendant will be sought from any other country. Since the other country is not and cannot be known until deportation proceedings have taken place, even the availability of extradition from any country Defendant might designate is highly speculative.

For the most part they did not waste much time with formal judicial proceedings, but there are few notable exceptions where they staged elaborate show trials." Defendant's Memorandum at 6.

**7.** Eichmann was not extradited from the United States. Since that time John Demjanjuk may have been extradited and prosecuted. This is still an extraordinarily small number of persons in the face of a number of denaturalization proceedings. *See* note 2, *supra.*

The Court finds, therefore, that there is no threat of foreign prosecution of Defendant which is real and substantial enough to justify his invocation of the Fifth Amendment privilege against self-incrimination.

Defendant also suggests that he fears prosecution in the United States for perjury arising from statements he made or failed to make in an interrogation by the OSI on July 20, 1983. The Court ordered the Defendant to submit the 1983 statement which he asserts as the basis for his fear of domestic prosecution in its July 30th order. Defendant has submitted an appendix, the table of contents of which indicates that a transcript of the interrogation is included, but in fact it is not. Consequently, the Court disregards this as a basis for the Defendant's invocation of the privilege.

### Documents

Defendant, at his deposition, also refused to produce various documents requested by Plaintiff. At the deposition, Defendant's attorney went through the list of requested documents one by one. He stated that Plaintiff already had the only documents Defendant might produce in response to requests 1 and 5. In response to requests 2, 3, 6, and 8, he stated that Defendant had documents that might fit the description but that he would not produce them because mere possession of the documents may tend to incriminate him. Defendant's attorney also stated that Defendant did not have any documents in categories 4, 7, 9, 10, 11, 12, 13, and 14.

The Supreme Court has expressly stated that the contents of documents which were voluntarily prepared are not privileged. *United States v. Doe*, 465 U.S. 605, 612, 104 S.Ct. 1237, 1242, 79 L.Ed.2d 552, 560 (1984). Defendant here makes no claim that he was compelled to prepare the documents sought.

Although the contents of a document may not be privileged, the Court explained in *Doe* that the act of producing the documents may be because compliance with a request concedes the existence of the papers and their possession and control by the person from whom they are sought. Compliance also indicates the witness' belief that the papers are those described in the subpoena or request. *Id.* Whether or not production of the documents is incriminating or testimonial depends on the facts or circumstances of the case.

Here Defendant's attorney has admitted that Defendant possesses various documents that may fit the descriptions of requested documents. Moreover, as far as the Court can tell, Defendant's refusal to produce the documents is based on his fear of foreign prosecutions which the Court has determined to be too speculative to support invocation of the privilege, even if it is otherwise available for documents.

### Sanctions

The United States seeks an order requiring Plaintiff to pay the Government's attorney's fees and expenses incurred as a result of this motion and the Government's attendance at a deposition in which the Defendant failed to appear. The Court is not convinced that Defendant has acted vexatiously or in bad faith and, therefore, it would not be appropriate to grant the Government's request for reimbursement in this matter.

Accordingly, Plaintiff's Motion to Compel Discovery is hereby GRANTED to the extent that it seeks to compel discovery and is hereby DENIED as to that portion seeking to recover fees and expenses.

So ORDERED.