UNITED STATES of America, Appellee,

v.

Jonas KLIMAVICIUS,
Defendant, Appellant.

No. 87–2034.

United States Court of Appeals,
First Circuit.

Heard April 8, 1988.
Decided May 26, 1988.

Ivars Berzins, P.C., Babylon, N.Y., with whom Daniel G. Lilley, P.A., Portland, Me., was on brief, for appellant.

Alan Held, Office of Special Investigations, Crim. Div., with whom Ronnie L. Edelman, Neal M. Sher, Director, Bruce J. Einhorn, Deputy Director, Washington, D.C., Richard S. Cohen, U.S. Atty., and F. Mark Terison, Asst. U.S. Atty., Portland, Me., were on brief, for appellee.

Before BOWNES, BREYER and TORRUELLA, Circuit Judges.

BOWNES, Circuit Judge.

The issue in this case is whether the district court abused its discretion in revoking the citizenship of a defendant in a denaturalization proceeding by means of a default judgment issued under Federal Rule of Civil Procedure 37(b)(2) as a sanction for failure to comply with discovery

the jury members could read the number for    themselves. This objection was overruled.

orders. Defendant-appellant, Jonas Klimavicius, refused to comply with the government's discovery requests on fifth amendment grounds. Klimavicius continued to assert the privilege even after the district court found the fifth amendment inapplicable. Citing bad faith and willful misconduct, the court entered a default judgment and revoked Klimavicius' certificate of naturalization. Because of the serious consequences of a loss of citizenship, we find that the entry of the default judgment constituted an abuse of discretion.

## I. FACTS AND PROCEDURAL HISTORY

Klimavicius was born on August 29, 1907, in Marijampole, Lithuania. He entered the United States on May 14, 1949, from West Germany under the Displaced Persons Act of 1948, ch. 647, Pub.L. 774, 62 Stat. 1009. Klimavicius continues to reside in the United States.

On May 30, 1984, the Office of Special Investigations in the Criminal Division of the Department of Justice (OSI) filed a complaint against Klimavicius under Section 340(a) of the Immigration and Nationality Act, as amended, 8 U.S.C. § 1451(a), charging illegal procurement of citizenship. The complaint alleges that during the German occupation of Lithuania, in the fall of 1941, Klimavicius was a member of a Nazi controlled police battalion, the Lithuanian Schutzmannschaft. The complaint further alleges that as a member of the Lithuanian Schutzmannschaft, Klimavicius "assisted in the persecution of Jews and other civilians by detaining and murdering unarmed civilians." The government charges that Klimavicius concealed his membership in the Schutzmannschaft and misrepresented his wartime activities to obtain his United States visa and citizenship.

From the outset of this litigation, appellant has met all discovery requests with the assertion of a fifth amendment privilege grounded on an alleged fear of foreign prosecution for war crimes and domestic prosecution for perjury. We review the history of these requests and claims of privilege to place the entry of the Rule 37 default judgment in context.

The government first noticed appellant's deposition for August 17, 1984. The government coupled the deposition notice with a document production request. Klimavicius failed to appear at his deposition, claiming objections to the scope of the government's request. Pursuant to appellant's motion for a protective order, the Magistrate modified OSI's document production request. The government then noticed the deposition of Klimavicius for March 6, 1985, and included a request for the production of documents in conformity with the Magistrate's order. On the appointed date, Klimavicius appeared for his deposition; he refused, however, to answer all questions except those concerning his name and current address or to produce or identify any of the requested documents. Klimavicius based his refusal on an assertion of the fifth amendment privilege against self-incrimination. The government filed a motion to compel discovery and for sanctions pursuant to Rule 37(a), (b) and (d) of the Federal Rules of Civil Procedure.[1] Klimavicius opposed the mo-

---

**1.** Rule 37 provides, in pertinent part:

    **(a) Motion for Order Compelling Discovery.** A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery as follows:

    ....

    **(b) Failure to Comply with Order.**

    ....

    **(2) Sanctions by Court in Which Action is Pending.** If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

    (A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

    (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party

tion by memorandum and affidavit in which he alleged "a reasonable and substantial fear of criminal prosecution by foreign sovereigns, particularly Israel, the Soviet Union and West Germany" and a fear of domestic perjury charges arising out of his prior statements to the OSI during an interrogation in July 1983. The district court ruled, *inter alia,* that insufficient evidence existed on the record to assess Klimavius' claim of privilege. Noting the importance of the privilege against self-incrimination, the court granted appellant an opportunity to produce additional documentation to support his claim of fear of prosecution. *See United States v. Klimavicius,* 613 F.Supp. 1222 (D.Me.1985).

On October 30, 1985, the district court granted the government's motion to compel discovery. *See United States v. Klimavicius,* 671 F.Supp. 814 (D.Me.1985). The court reviewed the documents submitted by Klimavicius pursuant to the prior order and found them inadequate:

The Court allowed the Defendant another opportunity to present a record because the privilege against self-incrimination plays such an important role in the American scheme of justice.... The Court requested that the Defendant submit certified, translated copies of the text of foreign laws which indicate he might be subject to prosecution and to make some showing that the laws would be applied to him if the allegations in the Complaint were proved. Defendant has not complied with this Court's Order, but instead, has relied on a plethora of unsubstantiated statements, irrelevant documents and copies of laws which have

not been shown to be accurate or current.

671 F.Supp. at 815 (citation and footnote omitted). The court ruled that Klimavicius had failed to demonstrate a real and substantial threat of either foreign or domestic prosecution;[2] it rejected, however, the government's request for attorney's fees and expenses, finding that Klimavicius had not invoked the privilege in bad faith.

The district court ruling did not deter appellant's reliance upon the fifth amendment. Subsequent to the denial of his motions for reconsideration and for a protective order, Klimavicius continued to assert the fifth amendment both at a second scheduled deposition and in response to the government's interrogatories, requests for the production of documents and request for admissions. The government, therefore, filed a motion for sanctions under Rule 37(b)(2), requesting an order prohibiting Klimavicius from testifying at trial or introducing into evidence those documents which he had refused to produce. The government also requested an order treating appellant's failure to comply with the prior court order as contempt of court and awarding costs and attorney's fees. In its decision, the district court found that Klimavicius' continued refusal to answer questions at this deposition and to produce documents was willful and justified severe sanctions under Rule 37. It declined, however, to impose immediate sanctions: "[B]ecause of the seriousness of this matter to the Defendant, the court is going to afford him one last opportunity to comply with the lawful discovery orders of this Court and provide a full and complete response to discovery requests made by the

---

from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

....

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds

that the failure was substantially justified or that other circumstances make an award of expenses unjust.

**2.** Because the court found that Klimavicius failed as a matter of fact to establish a real and substantial threat of foreign prosecution, citing *Zicarelli v. New Jersey State Commission of Investigation,* 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed. 2d 234 (1972), it did not reach the legal issue of whether the fifth amendment privilege is available to individuals fearing foreign prosecution. 671 F.Supp. at 815.

Plaintiff in this proceeding." *United States v. Klimavicius*, 116 F.R.D. 54, 57 (D.Me.1987).

Pursuant to the order of the district court, the government scheduled a third deposition of Klimavicius for June 1, 1987. Once again, appellant appeared, stated his name and address, and refused to answer all other questions on the basis of an asserted fifth amendment privilege. The government therefore filed a renewed motion for sanctions, requesting in the alternative (1) a default judgment under Rule 37(b)(2)(C); (2) an order prohibiting appellant from opposing the government's claims or supporting any defenses pursuant to Rule 37(b)(2)(B), taking as established certain designated facts pursuant to Rule 37(b)(2)(A), and rendering a judgment for the government based upon those facts; or (3) an order granting the relief requested in its previous motion for sanctions. The government also requested costs and attorney's fees.

In its decision, the court recognized the severity of the use of a default judgment to sanction appellant's behavior. It found, however, that Klimavicius' repeated failure to comply with discovery orders constituted bad faith and willful misconduct sufficient to justify the harshest response:

> This Court is fully aware of the severity of rendering a default judgment against a defendant in a denaturalization proceeding. Although this Court was reluctant to impose severe sanctions, as evidenced by its giving Defendant one last opportunity to comply with its orders, there are circumstances where the harshest of the Rule 37 sanctions must be imposed. This is such a case.

*United States v. Klimavicius*, 117 F.R.D. 12, 14 (D.Me.1987). The court stated that decisive action was necessary both as a punitive measure and to deter other defendants from similar misconduct. It therefore concluded: "The imposition of the sanction of judgment by default should not be made lightly. Given the circumstances of this case, however, it is both a proper and necessary exercise of this Court's discretionary power under Rule 37(b)(2)." *Id.* at 15. Accordingly, the district court issued a judgment on September 28, 1987, revoking and setting aside Klimavicius' certificate of naturalization and enjoining appellant from claiming any rights, privileges or advantages of United States citizenship. This appeal ensued.

## II. DENATURALIZATION THROUGH DEFAULT

█ Klimavicius attacks the decision of the district court on two grounds. First, he argues that the court erred in its rejection of his fifth amendment claim of privilege. Second, he argues that even if he did fail to establish the basis for a fifth amemdment claim, the court nonetheless lacks the power to denaturalize a defendant as a sanction for disobeying a court order. Conversely, the government contends that Klimavicius improperly invoked the privilege against self-incrimination and that the court order constituted a legitimate exercise of discretion justified by the flagrant misconduct of defendant. We do not reach the fifth amendment issue because we find, as a matter of law, that the imposition of a Rule 37 default judgment in a denaturalization proceeding constitutes an abuse of discretion.

*National Hockey League v. Metropolitan Hockey League*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976), defines the scope of our inquiry. In that case, the Court considered whether the entry of a default judgment under Rule 37 in an antitrust action for the repeated failure to comply with discovery orders constituted an abuse of discretion. The Court found that the court of appeals had erred in reversing the order of the district court. The Court explained the broad discretion granted to the trial court in imposing sanctions under Rule 37:

> The question, of course, is not whether this Court, or whether the Court of Appeals, would as an original matter have dismissed the action; it is whether the District Court abused its discretion in so doing....

> There is a natural tendency on the part of reviewing courts, properly employing the benefit of hindsight, to be heavily

influenced by the severity of outright dismissal as a sanction for failure to comply with a discovery order....

But here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.

*Id.* at 642–43, 96 S.Ct. at 2780 (citations omitted). Pursuant to the terms of Rule 37, therefore, a trial court may enter such orders "as are just," Fed.R.Civ.P. 37(b)(2), including a judgment by default, and we may reverse only upon a showing of abuse of discretion. *Accord Local Union No. 251 v. Town Line Sand & Gravel Inc.*, 511 F.2d 1198, 1199 (1st Cir.1975) ("Federal Rule 37 empowers a district court to make such orders as 'are just' when a party fails to comply with a discovery order, placing the court's handling of such matters beyond appellate review when there has been no abuse of discretion.") (citation omitted); *Corchado v. Puerto Rico Marine Management, Inc.*, 665 F.2d 410, 413 (1st Cir.1981) (same), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982).

■ We begin our analysis with a recognition of the exclusive power of Congress to establish rules for naturalization. *See* U.S. Const. art. I, § 8, cl. 4. Once naturalized, a person enjoys the same rights and opportunities as a native born citizen. *See Schneider v. Rusk*, 377 U.S. 163, 165, 84 S.Ct. 1187, 1188–89, 12 L.Ed.2d 218 (1964) ("[T]he rights of citizenship of the native born and of the naturalized person are of the same dignity and are coextensive. The only difference drawn by the Constitution is that only the 'natural born' citizen is eligible to be President.") (citing U.S. Const. art. II, § 1); *see also Knauer v. United States*, 328 U.S. 654, 658, 66 S.Ct. 1304, 1307, 90 L.Ed. 1500 (1946) ("Citizenship obtained through naturalization is not a second class citizenship."); *Luria v. United States*, 231 U.S. 9, 22, 34 S.Ct. 10, 13, 58 L.Ed. 101 (1913) (same). Pursuant to the fourteenth amendment, a certificate of naturalization lawfully procured cannot be revoked without the consent of the citizen: "the Amendment can most reasonably be read as defining a citizenship which a citizen keeps unless he voluntarily relinquishes it. Once acquired, this Fourteenth Amendment citizenship was not to be shifted, canceled, or diluted at the will of the Federal Government, the States, or any other governmental unit." *Afroyim v. Rusk*, 387 U.S. 253, 262, 87 S.Ct. 1660, 1665, 18 L.Ed.2d 757 (1967).

The broad protections afforded to citizenship do not apply, however, to a certificate of naturalization illegally procured. In *Knauer v. United States*, 328 U.S. at 674, 66 S.Ct. at 1315, the Court held: "Congress may provide for the cancellation of certificates of naturalization on the ground of fraud in their procurement and thus protect the courts and the nation against practices of aliens who by deceitful methods obtain the cherished status of citizenship here...." And in *Fedorenko v. United States*, 449 U.S. 490, 517, 101 S.Ct. 737, 752–53, 66 L.Ed.2d 686 (1981), the Court ruled that district courts lack equitable discretion to refrain from revoking a certificate of naturalization once the government has proven illegal procurement.

In the instant case, the government charges that Klimavicius illegally procured his certificate of naturalization by concealment of a material fact and willful misrepresentation as defined by Section 340 of the Immigration and Nationality Act, 8 U.S.C. § 1451. Klimavicius contends, however, that he lost his citizenship *not* pursuant to the terms of Section 340 of the Immigration and Nationality Act, but rather solely as a punishment for his improper assertion of a fifth amendment privilege. He argues, first, that Congress never authorized revocation of citizenship as a punishment for the improper assertion of the fifth amendment and, second, that even if Congress had so provided, such an order would exceed its constitutional authority.

■ The first prong of appellant's argument blurs the distinction between procedure and substance. Section 340 of the

Immigration and Nationality Act sets forth the substantive grounds on which a court may set aside a certificate of naturalization for illegal procurement. In authorizing the courts to entertain actions for denaturalization, Congress did not restrict the courts' authority to exercise the full panoply of judicial powers. The entry of a default judgment under Rule 37 is simply one such exercise of judicial power available to punish the defiance of judicial orders and to deter future misconduct. Congress had no need to authorize specially the application of Rule 37 to denaturalization proceedings.

Appellant's second argument, however, has some merit. Klimavicius challenges the *power* of Congress to authorize the use of a default judgment as a sanction in a denaturalization action. Appellant's brief, while unclear, appears to question congressional authority on two different grounds.[3]

First, appellant cites *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), for the proposition that Congress may not punish a person by revoking citizenship. In *Kennedy v. Mendoza-Martinez*, the Court held that Congress could not mandate the forfeiture of citizenship as punishment for the intentional evasion of military service without affording judicial or administrative proceedings. As noted by the government, that case is inapposite because in the present case the court recognized the right of Klimavicius to full judicial proceedings but found that he relinquished that right through his repeated defiance of court orders.

Appellant's second ground for questioning the power of the court to enter a Rule 37 default judgment is more persuasive. Klimavicius points to the unique nature of denaturalization proceedings. He argues that such proceedings are quasi-criminal, providing for a potential penalty far more severe than that carried by most crimes. Klimavicius cites *Klapprott v. United States*, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949), for the proposition that given the harsh consequences of the revocation of citizenship, the court simply may not enter a default judgment without putting the government to its proof. Although appellant misstates the holding in *Klapprott*, the reasoning of that case is applicable to the instant proceedings.

In *Klapprott*, the Court considered a petition to set aside a default judgment cancelling a citizen's certificate of naturalization. In the underlying denaturalization action, the defendant had received notice of a complaint filed by the government and had been given sixty days to answer; before the expiration of that time period, however, the defendant had been arrested on unrelated criminal charges and placed in jail. During his confinement, a default judgment in the denaturalization action was entered. Four years later, the defendant petitioned the district court to set aside the judgment. The court dismissed the petition on the grounds of laches and the court of appeals affirmed. On writ of certiorari, the Court considered the grave consequences attendant to denaturalization and concluded that "courts should not ... deprive a person of his citizenship until the Government first offers proof of its charges sufficient to satisfy the burden imposed on it, even in cases where the defendant has made default in appearance." 335 U.S. at 612–13, 69 S.Ct. at 389.

■ The holding in *Klapprott*, however, was modified upon a motion by the government. In a subsequent order, the Court amended its judgment and remanded the case to the district court "with directions to receive evidence on the truth or falsity of the allegations contained in petitioner's petition to vacate the default judgment en-

---

**3.** A third possible question raised by these facts is whether a Rule 37(b)(2)(C) default judgment should ever be entered to sanction an improper assertion of a fifth amendment claim of privilege. We have considered this question previously and answered it in the affirmative. *See Hodgson v. Mahoney*, 460 F.2d 326 (1st Cir.) (partial default judgment to sanction refusal to comply with court order based on claim of fifth amendment privilege not overly harsh), *cert. denied*, 409 U.S. 1039, 93 S.Ct. 519, 34 L.Ed.2d 488 (1972); *see also Davis v. Fendler*, 650 F.2d 1154 (9th Cir.1981) (default judgment within district court discretion where defendant failed to answer interrogatories after court rejected fifth amendment claim of privilege).

tered in the denaturalization proceedings." *Klapprott v. United States*, 336 U.S. 942, 69 S.Ct. 384, 93 L.Ed. 1099 (1949) (*Klapprott II*). On remand, the district court found that the defendant had abstained voluntarily from defending himself in the denaturalization action and had not shown good cause to set aside the default judgment. *United States v. Klapprott*, 9 F.R. D. 282 (D.N.J.1949), *aff'd*, 183 F.2d 474 (3d Cir.1950). After *Klapprott*, therefore, a district court *may* enter a valid denaturalization default judgment upon a defendant's failure to appear without good cause and need not require the government to prove the allegations of its complaint. *See* 6 J. Moore, W. Taggarat & J. Wicker, *Moore's Federal Practice* ¶ 55.05[5] (2d ed. 1988).

The facts in this case distinguish it from the precise holding of *Klapprott II*. The defendant in *Klapprott* failed either to present a defense or to demonstrate involuntary default. Conversely, Klimavicius has appeared before the court and has asserted repeatedly his right to present a defense. Judgment by default has been entered as a punishment for noncompliance with discovery orders, not as a result of nonappearance.

These differences aside, the underlying reasoning of *Klapprott* is determinative of the outcome of this case. The Court in *Klapprott* emphasized the unique nature and significance of a denaturalization proceeding:

> Denaturalization consequences may be more grave than consequences that flow from conviction for crimes. Persons charged with crime in United States courts cannot be convicted on default judgments unsupported by proof.... This Court has long recognized the plain fact that to deprive a person of his American citizenship is an extraordinarily severe penalty.... Because denaturalization proceedings have not fallen within the technical classification of crimes is hardly a satisfactory reason for allowing denaturalization without proof while requiring proof to support a mere money fine or a short imprisonment.

335 U.S. at 611–12, 69 S.Ct. at 389 (citations omitted). *Accord id.* at 619, 69 S.Ct.

at 392 (Rutledge, J., concurring) ("Regardless of the name given it, the denaturalization proceeding when it is successful has all the consequences and effects of a penal or criminal conviction, except that the ensuing liability to deportation is a greater penalty than is generally inflicted for crime."); *and Knauer v. United States*, 328 U.S. at 659, 66 S.Ct. at 1307 ("[D]enaturalization, like deportation, may result in the loss of 'all that makes life worth living.' ") (quoting *Ng Fung Ho v. White*, 259 U.S. 276, 284, 42 S.Ct. 492, 495, 66 L.Ed. 938 (1922)). The Court reaffirmed the severity of a denaturalization proceeding in *Schneiderman v. United States*, 320 U.S. 118, 122, 63 S.Ct. 1333, 1335, 87 L.Ed. 1796 (1943):

> In its consequences [denaturalization] is more serious than a taking of one's property, or the imposition of a fine or other penalty. For it is safe to assert that nowhere in the world today is the right of citizenship of greater worth to an individual than it is in this country. It would be difficult to exaggerate its value and importance. By many it is regarded as the highest hope of civilized men. This does not mean that once granted to an alien, citizenship cannot be revoked or cancelled on legal grounds under appropriate proof. But such a right once conferred should not be taken away without the clearest sort of justification and proof.

The Court therefore held that the government must prove its case in a denaturalization action by "evidence of a clear and convincing character." *Id.* at 123, 63 S.Ct. at 1335.

These cases emphasize the penal effect of denaturalization. In the instant case, appellant has suffered the severe penalty of loss of citizenship solely as a sanction for contempt of a court order. This result contrasts sharply with the procedure in criminal cases where contempt can never be punished by the entry of a guilty verdict in the underlying action. *Cf.* Fed.R.Crim. P. 42 (independent criminal contempt proceedings).

We turn to the precise language of Rule 37 to assess the necessity of the court's

action. Rule 37 lists numerous sanctions available to the court to sanction a party's failure to comply with a prior order. Among other available options, the court may issue an order deeming admitted certain facts, Fed.R.Civ.P. 37(b)(2)(A); it may issue an order prohibiting a party from defending against certain claims or introducing certain matters into evidence, Fed. R.Civ.P. 37(b)(2)(B); it may issue an order "striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, *or rendering a judgment by default against the disobedient party*," Fed.R.Civ.P. 37(b)(2)(C) (emphasis added); or it may issue a contempt order, Fed.R.Civ.P. 37(b)(2)(D). Rule 37 provides that in choosing among the available sanctions, "the court in which the action is pending may make such orders in regard to the failure [to obey a prior order] *as are just*." Fed.R.Civ.P. 37(b)(2) (emphasis added).

We hold that given the severity of a denaturalization proceeding, and in light of the other sanctions available to the trial court, the imposition of a default judgment in this case was unjust. *Cf. United States v. Costello,* 222 F.2d 656, 662 (2d Cir.) (affirming decision of trial court to sanction defendant's refusal to comply with court order with a fine where imposition of default judgment in a denaturalization proceeding "would not be a 'just' order"), *cert. denied,* 350 U.S. 847, 76 S.Ct. 62, 100 L.Ed. 755 (1955); *United States v. Linnas,* 527 F.Supp. 426 (E.D.N.Y.1981) (sanctioning defendant's refusal to comply with discovery order by deeming admitted certain facts but allowing defendant to rebut such evidence at trial "in view of the 'severe and unsettling consequences' which might result from loss of citizenship") (quoting *Fedorenko v. United States,* 449 U.S. at 505, 101 S.Ct. at 746). We are not insensitive to the fact that the district court granted appellant numerous opportunities to comply with its orders before imposing the sanc-

tion of judgment by default. Nor are we blind to the fact that appellant's age of eighty years gives him a compelling motive to delay the proceedings, and the possibility of deportation, by any means at all in the hope that he can remain in the United States for the rest of his natural life. We find, nonetheless, that the rendering of a Rule 37 default judgment in an action to set aside and revoke a certificate of naturalization is *per se* unjust and constitutes an abuse of discretion.

The government argues that even if Klimavicius' misconduct alone does not justify a default judgment,[4] the uncontroverted evidence submitted by the OSI is sufficient to sustain the allegations of the complaint and supports an affirmance on the merits. Although the record may well support that claim, we will not convert an appeal from a default judgment into a summary judgment proceeding. The government may file a motion for summary judgment whenever it wishes. We do not, of course, express any opinion on the merits of such a motion.

*The default judgment is vacated and the case remanded to the district court.*

---

4. The government cites *United States v. Theodorovich,* 102 F.R.D. 587 (D.D.C.1984), *aff'd per curiam,* 764 F.2D 926 (D.C.Cir.1985), as precedent for entering a Rule 37 default judgment in an action for denaturalization. The court in *Theodorovich,* however, only addressed the question of whether defendant had alleged facts sufficient to set aside the default judgment under Fed.R.Civ.P. 60(b); it did not consider the power of the court to enter the initial judgment under Rule 37.