# Eligibility of a Dual United States Citizen for a Paid Position with the Department of Justice

Section 606 of the Treasury and General Government Appropriations Act of 1999 does not bar the Department of Justice from employing, in a paid position, a United States citizen who is also a citizen of another country

August 26, 1999

MEMORANDUM OPINION FOR THE DIRECTOR
OFFICE OF ATTORNEY PERSONNEL MANAGEMENT
DEPARTMENT OF JUSTICE

You have asked whether, under section 606 of the Treasury and General Government Appropriations Act, 1999, Pub. L. No. 105–277, 112 Stat. 2681–480, 2681–513 to –514 (1998)[1] ("§ 606"), the Department of Justice may employ, in a paid position, a U.S. citizen who is also a citizen of another country ("dual U.S. citizen"). Section 606 prohibits the Department of Justice from using appropriated funds to employ persons whose post of duty is in the continental United States unless they are "citizen[s] of the United States" or otherwise excepted.[2] *Id.* 112 Stat. at 2681–513. We conclude that § 606 does not bar the Department of Justice from employing a dual U.S. citizen.

I

Section 606 provides as follows:

Unless otherwise specified during the current fiscal year, no part of any appropriation contained in this [Act] or any other Act shall be used to pay the compensation of any officer or employee of the Government of the United States . . . whose post of duty is in the continental United States unless such person: (1) is a citizen of the United States; (2) is a person in the service of the United States on the date of enactment of this Act . . . who, being eligible for citizenship, has filed a declaration of intention to become a citizen . . . (3) is a person who owes allegiance to the United States; (4) is an alien from Cuba, Poland, South Vietnam, the countries of the former Soviet Union, or the Baltic countries lawfully admitted . . . for permanent residence; (5) is a South Vietnamese, Cambodian, or Laotian refugee paroled in the United States after

[1] This provision is set forth as a note to 5 U S.C. § 3101 (Supp IV 1998)

[2] This memorandum addresses only dual U S. citizens whose second citizenship does not place them within one of the excepted categories

181

> January 1, 1975; or (6) is a national of the People's Republic of China who qualifies for adjustment of status pursuant to the Chinese Student Protection Act of 1992. . . . This section shall not apply to citizens of Ireland, Israel, or the Republic of the Philippines, or to nationals of those countries allied with the United States in a current defense effort . . . .

5 U.S.C. § 3101 note (Supp. IV 1998).

In a 1996 memorandum to your office, we addressed the closely related issue of the eligibility for employment of dual nationals who are not citizens of the United States, but who enjoy, as an incident of one of their nationalities, status in an excepted category ("noncitizen dual nationals"). *See Eligibility of a Noncitizen Dual National for a Paid Position Within the Department of Justice*, 20 Op. O.L.C. 366 (1996) ("1996 Memorandum"). In examining the application of § 606 to that situation,[3] we noted that although noncitizen dual national applicants "would seem eligible for hire" by virtue of their membership in one of the excepted categories, these applicants simultaneously would seem to be ineligible, because of their membership in the residual category of nonexcepted persons. *Id.* at 367. Because we did not believe that the plain language of § 606 decided the question, we turned to the purposes of the statutory provision. The 1996 Memorandum concluded that a blanket rule of either ineligibility or eligibility for employment of such noncitizen dual nationals would be in tension with one of "the various, and sometimes conflicting, goals of section 606."[4] *Id.* at 369. As a result, noncitizen dual nationals' eligibility for employment under § 606 had to be evaluated on a case by case basis, by applying the concept of "effective, dominant nationality." *Id.*[5] If the applicant's "effective, dominant nationality"

---

[3] The analogous statutory provision in 1996 was section 606 of the Treasury, Postal Service, and General Government Appropriations Act, 1997, Pub L No. 104-208, 110 Stat. 3009-314, 3009-354 (1996). Section 606, as part of an appropriations bill, has been reenacted every year, largely in its current form, since 1938

[4] As the 1996 Memorandum observed·

The general exclusion of noncitizens from federal employment in the United States seems to be aimed chiefly at protecting national security by ensuring the loyalty of Federal employees, encouraging noncitizens who seek Federal employment to become naturalized, and shielding United States nationals from competition in a substantial sector of the labor market     . The exception for nationals of "allied" foreign States, on the other hand, serves distinct, indeed often contrary, interests: it allows Federal employers greater flexibility in meeting their personnel needs, it expresses [the] Nation's solidarity with its allies; and it signifies confidence that the nationals of such allies are unlikely to betray the trust that the United States Government has reposed in them. Any simple, "bright line" rule that treated dual nationals in the applicant's position as eligible — or as ineligible — would promote some of these policies only at the expense of others.

20 Op O.L.C. at 367, *see also Hampton v Mow Sun Wong*, 426 U.S 88, 108, 109 (1976) ("The stated purpose of the [1938 provision] was to give preference to American citizens during a period of widespread unemployment," and its repeated enactment signifies "continuing interest in giving preference, for reasons unrelated to the efficiency of the federal service, to citizens over aliens.").

[5] *See supra* note 3 (citing *Nottebohm Case (Liechtenstein v. Guatemala)*, 1955 I C.J. 4, 22 (Apr 6)); Note, *Claims of Dual Nationals in the Modern Era The Iran-United States Claims Tribunal*, 83 Mich. L Rev. 597, 613 (1984).

would place him or her in an excepted category, he or she would be eligible; otherwise the applicant would be deemed ineligible.

## II

At the very least, in light of the 1996 Memorandum, the Department of Justice can hire dual U.S. citizens where their effective, dominant nationality is with the United States. To conclude otherwise — that § 606 bars the hiring of all dual U.S. citizens — would produce the anomalous result of placing U.S. citizens in a worse position than noncitizens. That result would be particularly untenable here where neither the language nor the purposes of the statute support such a reading. The only question, then, is whether dual U.S. citizens are in a better position for purposes of this statute than the noncitizen dual nationals who were the focus of the 1996 Memorandum — in other words, whether the inquiry into "effective, dominant nationality" is also necessary for purposes of considering the eligibility of dual U.S. citizens for employment.

The 1996 Memorandum read into the statute the concept of effective, dominant nationality. It is not entirely clear that we could not have concluded, from the language and structure of § 606, that the second nationality of the applicant is irrelevant if the applicant possesses one nationality that places him or her in an excepted category. The statute does not define ineligibility for employment, except by providing that an eligible person must possess any of six separate characteristics, and the noncitizen dual national in question did possess one of those six characteristics. Nevertheless, we interpreted the statute to incorporate the inquiry into effective, dominant nationality, and we do not need to revisit that opinion at this time.

There are strong arguments that the potential employees here, being citizens of the United States, are not subject to the test of effective, dominant nationality. Generally, U.S. law evidences hostility towards the notion of inferior classes of American citizenship. *Cf. Schneider v. Rusk*, 377 U.S. 163, 168–69 (1964) (striking down statute providing for denaturalization of naturalized citizens who returned to their original nation to reside for three or more years, noting that it "creates indeed a second-class citizenship").[6] Furthermore, although U.S. policy disfavors dual citizenship,[7] it recognizes that in many cases the status of

---

[6] U S. law's intolerance for second-class citizenship leads, for example, to assertions that naturalized citizens generally enjoy the same rights as natural born citizens *See Knauer v. United States*, 328 U.S. 654, 658 (1946) ("Citizenship obtained through naturalization is not a second-class citizenship It has been said that citizenship carries with it all of the rights and prerogatives of citizenship obtained by birth in this country 'save that of eligibility to the Presidency.' "); *United States v. Klimavicius*, 847 F 2d 28, 32 (1st Cir 1988) ("Once naturalized, a person enjoys the same rights and opportunities as a native born citizen.").

[7] *See, e g., Von Dunser v. Aronoff*, 915 F 2d 1071, 1073 (6th Cir 1990) ("In general, American law abhors the status of dual citizenship."), *Sadat v. Mertes*, 615 F 2d 1176, 1184 (7th Cir 1980) ("The official policy of this government has been to discourage the incidence of dual nationality." and noting "ambivalent policy" of U.S. government toward dual nationality).

dual U.S. citizenship may be a function of the laws of another country and is not necessarily a status that an individual may control.[8] *See, e.g., Von Dunser,* 915 F.2d at 1073 (footnote omitted) ("[D]ual citizenship exists, largely as a result of conflicts in nations' ideas of citizenship. Following the rule that each nation is permitted to determine who its citizens are, American law reluctantly recognizes the existence of dual citizenship in certain cases, even where the party has renounced allegiance to foreign powers.") In fact, courts have repeatedly emphasized that:

> The United States recognizes that a person may properly be simultaneously a citizen of this country and of another. Neither status in itself or in its necessary implications is deemed inconsistent with the other. ". . . The concept of dual citizenship recognizes that a person may have and exercise rights of nationality in two countries and be subject to the responsibilities of both. The mere fact that he asserts the rights of one citizenship does not without more mean that he renounces the other. . . . [D]ual citizenship . . . could not exist if the assertion of rights or the assumption of liabilities of one were deemed inconsistent with the maintenance of the other."

*Jalbuena v. Dulles,* 254 F.2d 379, 381 (3d Cir. 1958) (exercise of routine privilege of Philippine citizenship, applying for Philippine passport and subscribing oath to support Philippine Constitution, cannot deprive dual U.S./Philippine citizen of U.S. citizenship) (quoting *Kawakita v. United States,* 343 U.S. 717, 723–25 (1952)).[9]

---

[8] There are a number of ways in which an individual who holds U S. citizenship can also hold the citizenship of another country, many of which will depend on the laws of the foreign country, as well as the laws of the United States For example, a child born in the United States to alien parents acquires U.S. citizenship at birth and may also acquire the citizenship of his or her parents. A child born abroad to U S. citizen parents may acquire the U.S. citizenship of his or her parents, as well as the citizenship of the country of birth A U.S. citizen who marries an alien may thereby acquire the nationality of his or her spouse, under his or country's laws A U.S citizen minor whose parents become naturalized in a foreign state may thereby acquire the new nationality of the parents. Also, some states continue to claim persons as their nationals even after they have renounced citizenship on becoming naturalized in the United States. *See* 7 Charles Gordon et al , *Immigration Law and Procedure* §91.01[3][d] (1999); *Sadat,* 615 F.2d at 1184 n 10 (enumerating non-exclusive list of categories of dual U.S citizens); *see also Restatement (Third) of Foreign Relations Law of the United States* §212 and Reporters' Notes (1987).

[9] *See Kawakita,* 343 U.S at 725 ("[D]ual citizenship presupposes rights of citizenship in each country "); *see also Lehmann v Acheson,* 206 F 2d 592, 597–98 (3d Cir. 1953) (same); *Terada v. Dulles,* 121 F Supp. 6, 11 (D. Hawaii 1954) (same), *Rueff v. Brownell,* 116 F. Supp 298, 306 (D.N.J 1953) (same), *Okimura v Acheson,* 111 F. Supp. 303, 305 (D Hawaii 1952) (same), *cf. Coury v. Prot,* 85 F 3d 244, 247–48, 250 (5th Cir. 1996) (rejecting dual U.S. citizen's argument that diversity jurisdiction should be available based on non-U.S nationality, noting that "there is an emerging consensus among courts that, for a dual national citizen, only the American citizenship is relevant for purposes of diversity under 28 U S.C § 1332 ") (citing cases); *but see Rogers v Bellei,* 401 U.S 815, 822–45 (1971) (upholding statute providing that dual citizens born abroad would lose their U.S. citizenship unless they fulfilled a residency requirement in the United States, but concluding that result does not create impermissible inferior classes of U S citizenship because individuals affected by statute are not "Fourteenth-Amendment-first-sentence citizen[s]," "born or naturalized in the United States") Even *Bellei* does not support the creation of a broad rule of second-class citizenship based on dual citizenship status. The *Bellei* Court indicated that according

Without deciding whether Congress could place restrictions on the employment opportunities of dual U.S. citizens by virtue of their dual citizenship status, we would look for a much clearer statement before inferring that Congress had intended to create such "second class" citizenship based solely on dual citizenship status. We do not read the language in this appropriations provision to reach that result. We conclude that § 606 does not create any burdens on the employability of dual U.S. citizens by the Department of Justice that do not exist for sole U.S. citizens. No inquiry regarding their "effective, dominant nationality" is necessary for purposes of establishing the dual U.S. citizen's eligibility for employment under that provision. Section 606, in a fairly straightforward manner, carves out an exception for U.S. citizens to the general bar on employment. Because dual U.S. citizens are U.S. citizens, they fall into the excepted category.

At the same time, in particular cases, the nature of individual applicants' ties to the U.S. or the strength of their links to their U.S. citizenship may be relevant when considering them for employment with the Department of Justice, particularly when questions of security or loyalty may arise. The manner in which an individual applicant has held or exercised his or her dual citizenship status — or a variation on the "effective, dominant nationality" test — may be most appropriately incorporated into the hiring process, for example, as one of the many factors to be considered in decisions to grant or withhold security clearances for employment.[10]

### III

We conclude that § 606 does not bar the hiring of dual U.S. citizens by the Department of Justice. Although U.S. policy generally disfavors the holding of

---

different levels of favor to different types of U S. citizenship would be unacceptable — at least for those whose citizenship claim is "bottomed upon Fourteenth Amendment citizenship," 401 U S at 835, that is, who obtained U S. citizenship by birth or naturalization in the United States. According to the *Bellei* Court, for those who do not qualify as Fourteenth Amendment citizens — and whose citizenship claim is thus "wholly statutory," such as Mr. Bellei, *id.* at 833 — Congress may place a statutory condition subsequent for the purpose of maintaining that citizenship *Id.* The *Bellei* Court thus rejected the dissent's criticism that its holding presented the danger of creating a class of "second class citizen[s] " *Bellei*, 401 U S at 835–36, *but see id* at 837–39 (Black, J. dissenting) (criticizing majority opinion for suggesting the existence of a "hierarchy of citizenship"). To the extent that a dual U S. citizen may also be a Fourteenth Amendment citizen, under *Bellei* he or she would be entitled to be considered of the same class of citizens as sole U S citizens *See also Afroyim v. Rusk*, 387 U.S 253, 262 (1967) ("Once acquired, . . Fourteenth Amendment citizenship was not to be shifted, canceled, or diluted at the will of the Federal Government, the States, or any other governmental unit.") Accepting the general proposition that dual U.S. citizens who are Fourteenth Amendment citizens are constitutionally protected from badges of second-class citizenship, we see no reason to read any further distinctions among different types of dual citizens into § 606.

[10] Such an approach would not be unprecedented. See, e g., 32 C.F.R. §§ 147 5, 154 1, 154.2, 154 6, 154 7, 154 16; 32 C.F.R Pt. 154, App. H (1998) (Department of Defense regulations governing grant of security clearances to employees, limiting grant of security clearances to U.S. citizens in the absence of specified compelling circumstances, and taking "exercise of dual citizenship," § 147 5(b)(1), into account as one of many factors in determining whether or not to grant clearance); *cf.* 10 C.F.R. §§ 710 2, 710 4, 710 8 (1998) (Department of Energy regulations governing grant of security clearances to employees, not listing dual citizenship as a formal criterion to be considered, but using "exercis[e of] rights of citizenship conferred by a country other than the United States," § 710 4(e), as an example of a circumstance raising a question concerning "an individual's national allegiance," *id*, and requiring suspension of processing of application for clearance until questions of security risk are resolved)

dual citizenship, such a policy has not served as authority for affording dual citizens as a class fewer benefits or privileges than are given to those who are sole U.S. citizens. Indeed, as U.S. citizens, dual U.S. citizens should be presumed eligible for employment under § 606. How the individual applicant has held or exercised his or her dual citizenship status may be incorporated as one of many factors to be considered, for example, in decisions to grant or withhold security clearances for employment.

BETH NOLAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*